# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON SWEITZER, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **OXMASTER, INC., et al.,** | : | **NO. 09-5606** |
| **Defendants.** | : | |

## MEMORANDUM

GENE E.K. PRATTER, J.                                                    DECEMBER 22, 2010

In the course of performing his job as a paste mixer operator on April 29, 2009, Jason

Sweitzer was scraping residue inside a paste mixer manufactured by Oxmaster, Inc. when a

mixer paddle allegedly amputated Mr. Sweitzer's right index finger.  Mr. Sweitzer and his wife,

Kristin Sweitzer, filed this products liability action against Oxmaster Inc. and Wirtz

Manufacturing Company, Inc. in the Court of Common Pleas of Philadelphia County,

Pennsylvania, on November 3, 2009, and the case was removed to this Court on November 24,

2009 on the basis of diversity jurisdiction.  Mr. and Mrs. Sweitzer are proceeding on strict

liability theories of liability.

The Sweitzers filed three motions *in limine* in anticipation of the upcoming jury trial: 1)

Plaintiffs' Motion *in Limine* to Preclude Evidence of Negligence Concepts at Trial (Docket No.

25) (hereafter "Pls.' Mot. No. 25"); 2) Plaintiffs' Motion *in Limine* to Preclude Any Evidence

Regarding Plaintiff Jason Sweitzer's Alleged Failure to Lockout and Tagout (Docket No. 24)

(hereafter "Pls.' Mot. No. 24"); and 3) Plaintiffs' Motion *in Limine* to Preclude Any Evidence of

Compliance with Industry Standards and OSHA Government Regulations (Docket No. 26)

(hereafter "Pls.' Mot. No. 26"). Oxmaster and Wirtz oppose these motions.[1] Because each of these motions raise a common issue of law—whether Section 402A of the Restatement (Second) of Torts or Sections 1 and 2 of the Restatement (Third) of Torts applies in this action—the Court will address this controlling issue first and then address the individual motions *ad seriatim*.

## I. STANDARD OF REVIEW

The Court's inherent authority to manage the cases brought before it allow this Court to decide the present motions *in limine*. *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984). The Court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Accordingly, the Court may decide such motions to ensure the jury is not exposed to unfairly prejudicial, confusing, or irrelevant evidence, even if doing so may limit a party's defenses. *See United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). An *in limine* motion "is designed to narrow

---

[1] Oxmaster and Wirtz filed Defendants' Answer to Plaintiffs' Motion in *Limine* to Preclude Evidence of Negligence at Trial (Docket No. 35) (hereinafter "Defs.' Answer No. 35"). Oxmaster and Wirtz also filed a Supplemental Memorandum of Law in Support of Defendants' Answer to Plaintiffs' Motion in Limine to Preclude Evidence of Negligence at Trial (Docket No. 39) (hereinafter "Defs.' Answer No. 39"), without the Court's grant of leave to submit a supplemental brief. *See* Local R. Civ. P. 7.1(c) ("The court may require or permit further briefs or submissions *if the Court deems appropriate* . . . ." (emphasis added)). Additionally, having already filed Pre-trial Memoranda (Docket Nos. 11 and 12) pursuant to the Court's Scheduling Order (Docket No. 9) and Local Rule of Civil Procedure 16.1(c), the parties also filed without the Court's leave: Defendants' Trial Memorandum (Docket No. 19), Plaintiffs Jason Sweitzer and Kristin Sweitzer's Trial Memorandum (Docket No. 28), Plaintiffs Jason Sweitzer and Kristin Sweitzer's Supplemental Trial Brief (Docket No. 31), Defendants' Supplemental Trial Memorandum (Docket No. 38), and Plaintiffs Jason Sweitzer and Kristin Sweitzer's Supplemental Trial Memorandum (Docket No. 42). Although disappointed by the failure to follow the Court's preferred practices, and the Court will hope for no such casual approach by these parties or counsel when litigating in federal court in the future, the Court has accepted and considered these filings to the extent they are relevant to the Motions before the Court.

the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). It may also be appropriate for the Court to consider an *in limine* motion when it is more efficient to rule prior to trial and the pre-trial motion facilitates more thorough briefing than would likely be available during the course of trial. *Japanese Elec.*, 723 F.2d at 260. Even so, if the context of trial would provide clarity, the Court may defer the issues until trial. *Id.*[2]

---

[2]  The Court observes that the Sweitzers' motions *in limine* appear in essence to be dispositive motions in "sheep's clothing." A motion *in limine*, if granted, indeed may have the effect of a dispositive motion, as when evidence sought to be precluded is essential proof of an element of a claim or defense. *See* T. Thomas Cottingham III and Stephen M. Nichelsburg, *Getting to Dismissal: Tactics for Narrowing the Issues and Resolving Your Case*, 28 *Litigation* 41, 42, (2002) ("[A] true motion in limine, seeking only to bar the introduction of certain evidence, can have the effect of a dispositive motion."). However, the Sweitzer motions presently before the Court seek to preclude "any" evidence, with little or no citation to specific exhibits or witness testimony, as a matter of law, which is more akin to a dispositive motion in that the effect would be to bar certain defense theories *en toto* by barring all evidence that might support those theories. *Cf. Cox v. Delaware Elec. Co-op., Inc.*, 823 F. Supp. 241, 249 (D. Del. 1993) ("The Court also notes plaintiffs' motion is simply a veiled attempt to conclusively establish the negligence of the defendant. As such, it is a case dispositive motion masquerading as a motion *in limine*."). *Compare Black's Law Dictionary* 1038  (8th ed. 1999) (defining a "motion *in limine*" as a "pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard."), *with* Fed. R. Civ. P. 56 ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The Court would have preferred addressing these issues directly under summary judgment standards and the parties' development of the record to identify possible issues of material fact. *Cf. Howard Johnson Int'l. v. Cupola Enterprises, LLC*, 117 F. App'x 820, 823 (3d Cir. 2004) (unpublished) (holding that a district court may not *sua sponte* grant summary judgment unless the non-moving party has notice of the court's consideration of summary judgment and that party has "adequate time to marshal its evidence" for the purpose of establishing a genuine issue of material fact); *Bradley*, 913 F.2d at 1070. Nonetheless, the Court is proceeding to consider these motions at this time, recognizing that the issues raised in these motions benefit from thorough briefing that would not be possible during trial and that the Court's decision on this fundamental issue will assist the parties immeasurably in preparing for trial.

## II. PENNSYLVANIA STRICT LIABILITY LAW

This diversity action requires the Court to apply the substantive law of the state in which the claim arose. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). While the parties agree that Pennsylvania products liability law governs as the substantive law in this action, they dispute whether Pennsylvania follows the Second or Third Restatement of Torts on strict liability.

The Pennsylvania Supreme Court adopted § 402A of the Second Restatement in *Webb v. Zern*, 220 A.2d 853 (Pa. 1966). Since *Webb*, Pennsylvania courts and federal courts applying Pennsylvania law have followed the Second Restatement, although, as the state's Supreme Court has acknowledged, confusion has emerged as to the role negligence principles have in Pennsylvania strict liability cases. *See, e.g.*, *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1006-07 (Pa. 2003) (plurality opinion) ("While we have remained steadfast in our proclamations that negligence concepts should not be imported into strict liability law, we have muddied the waters at times with the careless use of negligence terms in the strict liability arena." (footnote omitted)). In coincidence with the existing confusion under the Second Restatement, the adoption of the Third Restatement has been proposed as a remedy. *See, e.g.*, *id.* at 1018-19 (Saylor, J., concurring) ("[The] summation of Pennsylvania law demonstrates a compelling need for consideration of reasoned alternatives, such as are reflected in the position of the Third Restatement.").

The Pennsylvania Supreme Court recently appeared poised to address "whether this Court should apply § 2 of the Restatement (Third) of Torts in place of 402A of the Restatement (Second) of Torts" when it granted *allocator* on that very issue in *Bugosh v. I.U. N. Am., Inc.*, 942 A.2d 897, 897 (Pa. 2008). In *Bugosh*, the Superior Court had refused to grant a new trial to

manufacturers of asbestos products, who argued the trial court should have applied § 2 of the Third Restatement instead of § 402A of the Second Restatement. *Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 910-11 (Pa. Super. Ct. 2007). In its decision, the Superior Court noted that the trial court had "applied the law currently accepted as authoritative in Pennsylvania on the subject of strict liability," and stated that "until and unless our Supreme Court alters its approach to strict liability, we will continue to adhere to established principles." *Id.* Ultimately, despite having received extensive briefing from the parties and *amici*, and holding oral argument, the Supreme Court dismissed the appeal as "having been improvidently granted" in a *per curiam* decision. 971 A.2d 1228, 1229 (Pa. 2009).

**A.  *Erie* Doctrine**

The *Erie* doctrine requires this Court to apply the state law as pronounced by the highest state court. *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). "[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) (citing *Wichita Royalty Co. v. City Nat'l Bank of Wichita Falls*, 306 U.S. 103, 107 (1939)). Here, the Supreme Court pronounced in 1966 that § 402A of the Second Restatement is the applicable state law in strict liability actions. Specifically, in *Webb* the Second Restatement was adopted "as the law of Pennsylvania," 220 A.2d at 854, and the Supreme Court has continuously and consistently affirmed that the Second Restatement is the governing law in subsequent decisions. Lower courts in the Commonwealth as well as federal courts in diversity actions have for more than four decades accepted that lead.

5

Furthermore, the Supreme Court has not provided a "clear and persuasive indication" that Pennsylvania no longer follows the Second Restatement. In fact, upon close consideration, the Court concludes that *Bugosh* confirms quite the opposite. "By dismissing the appeal in *Bugosh* the Pennsylvania Supreme Court obviously decided not to throw out the Restatement (Second) and *Azzarello*." *Durkot v. Tesco Equip., LLC*, 654 F. Supp. 2d 295, 299 (E.D. Pa. 2009); *see also Milesco v. Norfolk S. Corp.*, No. 1:09-CV-1233, 2010 WL 55331, at *3 (M.D. Pa. Jan. 5, 2010) ("Namely, it is instructive that when faced with the opportunity to supplant the Second RST with the Third RST the Pennsylvania Supreme Court declined the invitation to do so."). And in light of the *Bugosh* dismissal in the Supreme Court, the Superior Court's *Bugosh* decision affirming the Second Restatement stands unreversed. *See* 932 A.2d at 911 ("Until and unless our Supreme Court alters its approach to strict liability, we will continue to adhere to established principles [under § 402A of the Second Restatement]."). Moreover, Justice Saylor's *Bugosh* dissent confirms that Pennsylvania continues to follow the Second Restatement. 971 A.2d at 1229-49 (Saylor, J., dissenting); *see also Durkot*, 654 F. Supp. 2d at 299. Accordingly, pursuant to the *Erie* doctrine, this Court is guided by § 402A of the Second Restatement as the governing law in Pennsylvania for strict liability. *Cf. Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 204 (1956) (applying older state cases when "there is no later authority from the [state] courts, . . . no fracture in the rules announced in those cases has appeared in subsequent rulings or dicta, and . . . no legislative movement is under way in [the state] to change the result of those cases.").

**B.** *Berrier* **Decision**

The Court acknowledges that the determination to follow §402A of the Second Restatement may appear to be at odds with certain Third Circuit Court of Appeals case law. The Court would suggest that such appearances are deceiving.

Shortly before *Bugosh* was issued, the Court of Appeals predicted that the Supreme Court would adopt "§§ 1 and 2 of the Third Restatement's definition of a cause of action for strict products liability." *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 53 (3d Cir. 2009). The issue in *Berrier* was whether a manufacturer was strictly liable for a bystander's injuries under Pennsylvania law. Upon finding that no state Supreme Court decisions specifically addressed the issue, *id.* at 45, and cognizant that *Bugosh* was pending before the Supreme Court, *id.* at 56 n.27, the Court of Appeals conducted an extensive analysis of Pennsylvania products liability law as a predicate to its prediction. *Id.* at 46-60. In particular, the Court of Appeals determined that "there is substantial support on the [Supreme] Court to adopt the Third Restatement's approach to product liability in an appropriate case," given the concurring opinion of Justice Saylor in *Phillips v. Cricket Lighters*, 841 A.2d at 1012-23 (Saylor, J., concurring), and the dissenting opinion of Justice Newman in *Pennsylvania Department of General Services v. United States Mineral Products Co.*, 898 A.2d 590, 615-19 (Pa. 2006) (Newman, J., concurring and dissenting). *Berrier*, 563 F.3d at 57.

Here, Oxmaster and Wirtz ask the Court to apply the Third Restatement in light of *Berrier*, arguing that it constitutes binding precedent. The Court disagrees. Without addressing the question of whether or not *Berrier* amounts to excessive prognostication under *Erie*, the Court finds that it is not bound by *Berrier*. Of course, the Court must follow the Court of

Appeal's prediction of Pennsylvania law as a general rule, except when the state's highest court issues a decision contradicting that prediction or state intermediate appellate court's decisions subsequently indicate that prediction has not come to pass. *Largoza v. Gen. Elec. Co.*, 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) ("[I]t is axiomatic that this court is bound by a decision of the Third Circuit predicting Pennsylvania law unless the state supreme court issues a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred." (citations omitted)); *Stepanuk v. State Farm Mut. Auto. Ins. Co.*, No. CIV. A. 92-6095, 1995 WL 553010, at *2 (E.D. Pa. Sept. 19, 1995) ("The only exception to this rule is if later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error." (citations omitted)); *see also Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 46 (3d Cir. 1991) ("[W]hen we are applying state law we are, of course, free to reexamine the validity of our state law interpretation based on subsequent decisions of the state supreme court."); *Aceto v. Zurich Ins. Co.*, 440 F.2d 1320, 1322 (3d Cir. 1971) ("While this court must often undertake such interpretation [of Pennsylvania law], final authority upon all such matters [is] vested in the highest court of the Commonwealth. No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that legal question."); *cf.* Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va. L. Rev. 1671, 1681 (1992) ("Until corrected by the state supreme court, such incorrect predictions . . . may even mislead lower state courts that may be inclined to accept federal predictions as applicable precedent.").

Thus, although the *Berrier* decision predicted that the Pennsylvania Supreme Court would adopt the Third Restatement in its entirety, this Court notes, as a basic factual matter, that result has not materialized at present. *See Durkot*, 654 F. Supp. 2d at 299; *cf. Freed v. Geisinger Med. Ctr.*, 5 A.3d 212, 224 n.11 (2010) (Saylor, J., dissenting) ("[T]o all appearances, the Court seems laboriously to be awaiting 'the right case' in which to address the pervasive difficulties encountered in Pennsylvania state and federal courts in the aftermath of the unique interpretation of Section 402A of the Second Restatement of Torts . . . ."). In fact, Pennsylvania state courts and federal courts sitting in diversity have continued to apply § 402A of the Second Restatement in strict liability cases since *Berrier* and *Bugosh*. *See Lance v. Wyeth*, 4 A.3d 160, 169 (Pa. Super. Ct. 2010) ("Our Supreme Court has never adopted this provision [Restatement (Third) of Torts: Products Liability § 6(c)], and it runs contrary to law as stated in *Hahn* and the Restatement (Second) of Torts, § 402A. . . . [T]he Restatement (Second) of Torts, § 402A remains the law in this Commonwealth . . . ."); *Estate of Hicks v. Dana Cos., LLC*, 984 A.2d 943 (Pa. Super. Ct. 2009) (affirming a trial court's denial of appellant's request for § 2 of the Third Restatement to apply); *French v. Commonwealth Assocs., Inc.*, 980 A.2d 623 (Pa. Super. Ct. 2009) (confirming that the Second Restatement applies in strict liability cases); *Milesco*, 2010 WL 55331 (declining to follow *Berrier* and applying the Second Restatement); *Durkot*, 654 F. Supp. 2d 295 (holding that the Second Restatement is the governing law and that *Berrier* is not binding precedent). *But see, e.g., Covell v. Bell Sports, Inc.*, Civil Action No. 09-2470, 2010 WL 4783043 (E.D. Pa. 2010)*; Hoffman v. Paper Converting Machine Co.*, 694 F. Supp. 2d 359 (E.D. Pa. 2010)*; Richetta v. Stanley Fastening Systems, L.P.*, 661 F. Supp. 2d 500 (E.D. Pa. 2009).

The Court also has not found any Supreme Court or Superior Court post-*Bugosh* decision that has applied the Third Restatement as the governing law in a strict liability action. Significantly, the Supreme Court in *Barnish v. KWI Building Co.*, 980 A.2d 535 (Pa. 2009), a post-*Bugosh* decision, applied the strict liability requirements under § 402A of the Second Restatement, and the concurring opinion noted with a citation to the *Bugosh* dissent "that the proper approach to the foundational elements of a strict-liability claim is a subject in current controversy in this Court," *id.* at 549 (Saylor, J., concurring).

While this Court expresses no opinion on whether the Pennsylvania Supreme Court will ever directly consider adopting the Third Restatement, the Court recognizes that the option of waiting for the Supreme Court is unavailable when the ensuing risk is the inconsistent application of the law, which raises the specter of a conflict with principles of comity and federalism. *Jaworowski v. Ciasulli*, 490 F.3d 331, 332 n.1 (3d Cir. 2007) ("To wait for the [state] Supreme Court to reach an issue that it may never need to reach would be to abdicate [a federal court's] responsibility, while sitting in diversity, 'to seek to eliminate inconsistency between federal and state courts in the application of state substantive law.'" (quoting *Nationwide Ins. Co.*, 953 F.2d at 47)); *see also Durkot*, 654 F. Supp. 2d at 299. Thus, this Court considers it obliged to respect the actual pronouncements of law by the state appellate courts on this issue and would indeed expect our Court of Appeals to give its own *Berrier* decision no greater significance than this Court is constrained to accord it at this time.

## III. MOTION *IN LIMINE* TO PRECLUDE EVIDENCE INTRODUCING NEGLIGENCE CONCEPTS

The Sweitzers move the Court to preclude Oxmaster and Wirtz from introducing the testimony of defense witnesses or exhibits that allege negligence concepts or conduct.

Specifically, they argue that such evidence is inadmissible for the purposes of: (1) refuting causation, (2) raising an assumption of risk defense, and (3) asserting Mr. Sweitzer's employer was negligent in improperly training him on the use of the paste mixer.[3] The Court shall address these three bases for inadmissibility and the defense responses respectively below.

## A. Causation

The Sweitzers assert that any evidence of Mr. Sweitzer's conduct should be precluded as evidence for the purpose of rebutting the legal cause of Mr. Sweitzer's injury. This argument concerning "causation" evidence appears to target broadly any potential defense evidence concerning Mr. Sweitzer's conduct as the Sweitzers do not name specific exhibits or witness testimony to preclude, except for specifically citing "[e]vidence of Plaintiff's alleged statements regarding that the accident was his fault." Pls.' Mot. No. 25, Pls.' Proposed Order at 2. The only circumstances that would permit the defense to introduce evidence on causation, the Sweitzers contend, would be if Mr. Sweitzer's conduct "rose to the level of unforeseeability, outrageousness, or recklessness," Pls.' Mot. No. 25 at 6, or his conduct was the "sole cause of the accident or somehow constituted a misuse of the machine," *id.* at 7. They assert these exceptions do not apply here and, consequently, Mr. Sweitzer's conduct and alleged statements are inadmissible. *Id.*

---

[3] The Sweitzers also move in two separate motions to preclude defense evidence related to industry standards and alleged failure to lockout and tagout, which, as the parties note, can be associated with negligence concepts or conduct. *See* Pls.' Mot. No. 24; Pls.' Mot. No. 26. Because the two motions are raised under separate cover, however, the Court will address them in separate sections of this Memorandum.

The Court also notes that Oxmaster and Wirtz argue that evidence of Mr. Sweitzer's conduct may be admissible as a means of assessing the credibility of Mr. Sweitzer's account for his injury. Defs.' Answer No. 35 ¶ 14. Given that the Sweitzers do not raise this issue in their motion, and based on the forthcoming discussion and decision, the Court is not considering this defense argument at this time.

The defense's position appears to be that Mr. Sweitzer "caused his accident by failing to follow the cleaning procedures which his employer taught him," Defs.' Answer No. 35 at 11, and evidence of this, including Mr. Sweitzer's conduct, is admissible on causation pursuant to the exceptions that the Sweitzers acknowledge. The Court notes that Oxmaster and Switzer do not identify under which of these exceptions they intend to offer evidence of Mr. Sweitzer's conduct; instead, their briefing merely argues that these exceptions exist.

In a strict liability claim, a manufacturer or seller will be held "strictly liable if a defect in its product causes injuries to a user." There are two elements a plaintiff must prove to prevail in a strict liability case: first, the product is defective, and second, the defect legally caused the injury. *Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169, 1172 (Pa. 1997); *Walton v. Avco Corp.*, 610 A.2d 454, 458 (Pa. 1992); *see also* Restatement (Second) of Torts § 402A (1965). In regards to the causation element, a plaintiff bears the burden of proving by a preponderance of the evidence that the harm he sustained was proximately caused by the product's defect. *Jacobini v. V. & O. Press Co.*, 588 A.2d 476, 479 (Pa. 1991). Proximate cause is analyzed in Pennsylvania under the substantial factor test. *Spino*, 696 A.2d at 1172 ("[T]he defect was a substantial factor in causing the injury.").

As the parties appropriately have recognized, the relevant case law permits defendants to admit evidence of a plaintiff's conduct on the issue of proximate cause in certain limited circumstances. For example, our Court of Appeals held that a jury may consider a plaintiff's actions first to decide if a plaintiff's conduct was "not reasonably foreseeable or were otherwise extraordinary," and, if so, then to consider whether the conduct or the defect was the substantial factor in causing the plaintiff's harm. *Parks v. AlliedSignal, Inc.*, 113 F.3d 1327, 1336 (3d Cir.

1997).  Another circumstance when a jury may consider evidence of the plaintiff's conduct is when a defendant argues the conduct was the sole cause of the injury.  *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 396 (3d Cir. 1999); *Jara v. Rexworks Inc.*, 718 A.2d 788, 793 (Pa. Super. Ct. 1998).  Defendants also have been permitted to introduce evidence that the plaintiff misused the product or that the plaintiff's actions amounted to highly reckless conduct.  *Childers v. Power Line Equip. Rentals, Inc.*, 681 A.2d 201, 207 (Pa. Super. Ct. 1996).

The availability of any of these exceptions, however, depends upon factual determinations that are not possible to reach at this time.  Without the full development of the relevant facts, the Court finds it inappropriate to grant the plaintiff's motion on the basis of causation at this pre-trial stage.  *See Nesbitt v. Sears, Roebuck and Co.*, 415 F. Supp. 2d 530, 546 (E.D. Pa. 2005) ("Granting plaintiff's motion at this stage would require factual determinations that are speculative and that impede the function of the jury.").  Pursuant to these narrow exceptions, it is permissible for Oxmaster and Wirtz to submit evidence of Mr. Sweitzer's conduct, and the Court extrapolates from their briefing they intend to present such evidence for those purposes, even without specifying which exception might apply.  Based on the limited context of the case provided in the parties' briefs thus far, even evidence of Mr. Sweitzer's alleged comments that "the accident was his fault" could be relevant to address whether, for example, Mr. Sweitzer's conduct constituted a misuse of the mixer.  Accordingly, the Court denies without prejudice the Swetizers' Motion at Docket No. 25 on the basis of causation to preclude any evidence on Mr. Sweitzer's conduct.

**B. Assumption of Risk**

The Sweitzers also ask the Court to preclude "[a]ny evidence that Plaintiff assumed the risk of his injuries." Pls.' Mot. No. 25, Pls.' Proposed Order at 2. Again, the Sweitzers do not identify specific exhibits for the Court's consideration, but they contend that "Defendant's liability expert, Jack Krafchick, had issued opinions and cited deposition testimony, which suggests . . . negligence on part of the Plaintiff in operating the machine." Pls.' Mot. No. 25 ¶ 12. Oxmaster and Wirtz refute this characterization of the expert's testimony in part, contending that Mr. Sweitzer in fact "was adequately trained by his employer," yet Mr. Sweitzer failed to follow the cleaning procedures he was taught, thereby assuming the risk of his injury. Defs.' Answer No. 35 at 11, 12-13.

Both parties specifically dispute whether Oxmaster and Wirtz may raise the assumption of the risk defense in this action. Assumption of the risk, albeit, narrowly defined, is recognized as an affirmative defense for a jury's consideration in Pennsylvania strict product liability cases. *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 902 (Pa. 1977); *Frey v. Harley Davidson Motor Co.*, 734 A.2d 1, 15 (Pa. Super. Ct. 1999). A plaintiff will be "precluded from recovery only if he knows of the specific defect eventually causing his injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defect." *Berkebile*, 337 A.2d at 901. Before a jury may consider the defense, "the defendant must produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it." *Robinson v. B.F. Goodrich Tire Co.*, 664 A.2d 616, 618 (Pa. Super. Ct. 1995) (citation omitted). However, a jury may not consider the assumption of risk defense when, "[a]n employee who is required to use certain equipment in the course of his employment and who uses that equipment as directed by

14

the employer has no choice in encountering a risk inherent in that equipment." *Jara*, 718 A.2d at 795. Under such circumstances, an employee's assumption of the risk of using a product cannot be voluntary. *Id.*

The Sweitzers assert that the defense here may not introduce evidence concerning Mr. Sweitzer's alleged assumption of the risk as a matter of law since "the Pennsylvania Superior Court has ruled that the defense of assumption of risk is unavailable in employment-context products liability actions," and Mr. Sweitzer was using the paste mixer as required by his employment. Pls.' Mot. No. 25 at 7. In the alternative, the Sweitzers assert that the defense is unavailable on the grounds that Mr. Sweitzer did not know of the specific defect, because he allegedly turned off the mixer and believed it was in a safe position. *Id.* at 9. Oxmaster and Wirtz respond that the assumption of the risk defense is available to them because Mr. Sweitzer did not use the paste mixer "as directed" by his employer given his alleged failure to turn the mixer off before opening the lid and neglecting to look inside the mixer to ascertain if the paddles had stopped moving. Defs.' Answer No. 35 at 12-13.

Contrary to the Sweitzers' assertion otherwise, the assumption of risk defense is not barred and continues to be available under certain circumstances in strict liability actions when an employee is acting in the course of his employment. *See, e.g.*, *Nesbitt*, 415 F. Supp. 2d at 545 (recognizing that determining whether the plaintiff was "directed by" his employer is a predicate to determining if assumption of the risk is precluded as a matter of law); *Martinez v. Triad Controls*, 593 F. Supp. 2d 741, 766 (E.D. Pa. 2009) (finding that assumption of the risk might apply when there is an existing issue of material fact on whether the plaintiff was using a press as directed by his employer); *D'Angelo v. ADS Mach. Corp.*, 128 F. App'x 253, 256 (3d Cir. 2005)

(unpublished) (affirming the district court's decision to permit the jury to consider assumption of the risk given that the record contained "sufficient evidence" of a genuine issue of fact concerning whether the plaintiff acted as his employer directed or misusing the product contrary to his employer's training); Pa. Suggested Standard Civil Jury Ins. § 8.09 (2008) (providing a proposed instruction on assumption of the risk in the employment context: "if you find that the plaintiff was required to use this product in the course of [his] [her] employment, and that the plaintiff used the product as directed by [his] [her] employer, then you may not find that there was an assumption of risk by the plaintiff, that could bar [him] [her] from recovery").

Whether Mr. Sweitzer used the mixer "as directed" and whether Mr. Sweitzer knew of the specific defect are each factual determinations appropriate for the jury's resolution. The Court cannot say at this pre-trial stage without sufficient information that the assumption of the risk defense does not apply here as a matter of law. *See Nesbitt*, 415 F. Supp. 2d at 545. ("[T]he Court cannot say as a matter of law that the assumption of the risk doctrine is inapplicable to defendants without the presentation of evidence on certain issues, such as whether plaintiff used the [product] as directed by [his employer] . . . and whether plaintiff understood the dangers associated with using the [product] . . . ."). Hence, the Court denies without prejudice the Sweitzers' Motion at Docket No. 25 to preclude any evidence on Mr. Sweitzer's conduct on the basis of assumption of the risk.

### C. Employer Training

Asserting that evidence of Mr. Sweitzer's employer's alleged negligence is inadmissible, the Sweitzers seek to prevent the introduction of evidence at trial to show that "Plaintiff was not properly trained or instructed by his employer in the proper use, operation and/or maintenance of

the Oxmaster, Inc's [sic] mixer, involved in Plaintiff's accident." Pls.' Mot. No. 25, Pls.' Proposed Order at 2. While the Sweitzers do not identify specific exhibits for the Court's consideration, they contend that "Defendant's liability expert, Jack Krafchick, had issued opinions and cited deposition testimony, which suggests [sic] negligence in training on part of Plaintiff's employer." Pls.' Mot. No. 25 ¶ 12.

In response, Oxmaster and Wirtz deny "that Mr. Krafchick states the plaintiff's employer was negligent in training the plaintiff." Defs.' Answer No. 35 ¶ 12. In fact, they assert that Mr. Sweitzer's employer "sufficiently trained plaintiff on how to operate the paste mixing system properly" *id.* at 13; see also *id.* at 11. The defense position is that evidence of employer's conduct "is not being offered to show negligence," but is in fact admissible to show the design of the paste mixing system, and plaintiff's training on how to operate the system, which would help establish causation and highly reckless/assumption of the risk. *Id.* at 13.

Accordingly, based upon the parties' respective positions, it appears no dispute exists concerning evidence that Mr. Sweitzer "was *not* properly trained or instructed by his employer," as Oxmaster and Wirtz represent that they are not pursuing a theory that Mr. Sweitzer's employer was negligent. Although Oxmaster and Wirtz assert that they intend to offer evidence of the employer's alleged sufficient training of Mr. Sweitzer on the operation of the paste mixer, the Sweitzers' motion does not implicate the admissibility of such evidence. Accordingly, the Court is thereby denying the Motion at Docket No. 25, without prejudice, as moot on this basis.

## IV.  MOTION *IN LIMINE* TO PRECLUDE EVIDENCE REGARDING ALLEGED FAILURE TO LOCKOUT AND TAGOUT

The Sweitzers argue that Oxmaster and Wirtz must be precluded from "presenting any evidence at trial on Plaintiff Jason Sweitzer's alleged failure to lockout and tagout the machine

while removing excess paste." Pls.' Mot. No. 24 at 2. They contend such evidence is irrelevant and misleading, because Mr. Sweitzer was not required to perform the procedure at the time of his injury. Pls.' Mot. No. 24 at 5, 8-9; *see also id.* ¶¶ 2-3. They also assert such evidence may confuse and prejudice the jury "by permitting the consideration of impermissible causation factors." *Id.* at 5; *see also id.* at 7-8. The Sweitzers cite the expert report of Mr. Krafchick as support that the defense seeks to offer evidence that Mr. Sweitzer's injury "was caused by his failure to lockout and tagout the mixer machine." *Id.* at 1-2. As their only response to the issues raised in this motion, Oxmaster and Wirtz's deny that Mr. Krafchick states that Mr. Sweitzer was negligent in failing to execute the lockout and tagout procedure, because "this procedure was not required in the factual circumstances of this lawsuit." Defs.' Answer No. 35 ¶ 12.

At the outset, the Court notes that both parties maintain that Mr. Sweitzer was not required to perform the lockout and tagout procedure under either party's theory of the case. Thus, it appears that this evidence is not relevant on the basis of causation or otherwise in this action. Federal Rule of Evidence 402 provides that evidence is not admissible if it is not relevant, and evidence is not relevant when it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401. Because evidence of Mr. Sweitzer's failure to tagout and lockout are not relevant to the jury's determination of the issues that the parties raise in this case, such evidence is inadmissible pursuant to the Federal Rules of Evidence 401 and 402, and the Court grants this Motion at Docket No. 24.[4]

---

[4] The Court also finds that the evidence concerning the alleged failure to lockout and tagout, even if relevant, would have a prejudicial effect that outweighs the evidence's probative value. *See* Fed. R. Evid. 403.

## V.  MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF COMPLIANCE WITH INDUSTRY STANDARDS AND OSHA REGULATIONS

The Sweitzers seek to preclude Oxmaster and Wirtz from presenting evidence concerning the "alleged compliance of their mixer with industry standards and OSHA [Occupational Safety and Health Administration] regulations."  Pls.' Mot. No. 26 at 1.  They expect that Oxmaster and Wirtz will try to raise this defense because their expert, Mr. Krafchick, stated in his report that the mixer complied with such standards and regulations, *id.* ¶¶ 12-14; *id.* Ex. A at 2, and Oxmaster inquired at the deposition of the corporate designee of Mr. Sweitzer's employer, Jerry Reitennauer, about OSHA regulations, *id.* ¶ 15; *id.* Ex. B at 192-93.  The only response that Oxmaster and Wirtz have, to the extent the Court is able to discern one, is that Oxmaster and Wirtz "admit that Mr. Krafchick has referenced certain industry standards and OSHA regulations." Defs.' Answer No. 35 ¶ 12.

Under Pennsylvania law, a jury may not consider evidence of industry standards or regulations to show the alleged reasonableness of a manufacturer's conduct in its design choice or the alleged absence of a product defect.  *Lewis v. Coffing Hoist Div.*, 528 A.2d 590, 594 (Pa. 1987); *Majdic v. Cincinnati Mach. Co.*, 537 A.2d 334, 338-39 (Pa. Super. Ct. 1988); *Czarnecki v. Home Depot USA, Inc.*, Civil Action No. 07-4384, 2009 WL 1706582, at *8 (E.D. Pa. June 15, 2009); *Nesbitt*, 415 F. Supp. at 534.  The Pennsylvania Supreme Court has reasoned that the admission of evidence on this basis improperly introduces negligence concepts to strict liability law.  *Lewis*, 528 A.2d at 594.  Additionally, the Supreme Court found that admitting such evidence "create[s] a strong likelihood of diverting the jury's attention from the [product] to the reasonableness of the [manufacturer's] conduct in choosing its design."  *Id.*; *cf.* Fed. R. Evid. 403.

Because it is not permissible for Oxmaster and Wirtz to assert the mixer was in compliance with industry standards and OSHA regulations for the purpose of showing the alleged reasonableness of a manufacturer's conduct in its design choice or the alleged absence of a product defect, the Court finds that evidence of compliance with such standards and regulations offered for those purposes is not relevant to the issues that the jury will confront in this case. In accordance with the Court's finding and pursuant to Federal Rules of Evidence 401 and 402, the Court grants the Sweitzers' Motion at Docket No. 26.[5]

## VI. CONCLUSION

For the foregoing reasons, the Court denies without prejudice in part, and denies as moot in part the Sweitzers' Motion *in Limine* to Preclude Evidence of Negligence Concepts at Trial (Docket No. 25). Insofar as the motion is denied on the basis of causation and assumption of the risk, the denial is without prejudice to the Sweitzers to object on any appropriate basis at trial in the event the defense offers evidence of Mr. Sweitzer's conduct. The Court will address the propriety of offering such evidence and any objections at trial when the Court will have the benefit of the precise evidence and context at trial.[6] Similarly, to the extent that the Sweitzers

---

[5] Additionally, the Court finds that such evidence, even if relevant, is excludable since the probative value is substantially outweighed by its prejudicial effect. *See* Fed. R. Evid. 403.

[6] If the Court ultimately allows Oxmaster and Wirtz to admit such evidence, the Court may, as appropriate, give limiting instructions to the jury concerning the products liability issue of causation and assumption of the risk, given the limitations on the admissibility and the jury's consideration of evidence of a plaintiff's conduct. *See, e.g.*, *Leaphart v. Whiting Corp.*, 564 A.2d 165, 168-69 (Pa. Super. Ct. 1989) (noting a jury should be instructed that "contributory negligence is not a defense to strict liability"), *allocator denied*, 577 A.2d 890 (1990); *Parks*, 113 F.3d at 1333 (recognizing that when courts admit evidence concerning whether plaintiff's conduct was unforeseeable or extraordinary, "they must elucidate the limited permissible uses of that evidence, as it is highly susceptible to misinterpretation by the jury"); *cf. Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455 (D.N.J. 2002) ("The limited admissibility of evidence about plaintiff's conduct in a strict liability action should be handled with care to ensure that the

dispute the Court's understanding that no issue exists between the parties concerning evidence of the employer's alleged improper training or instruction, they may renew the motion in advance of trial to clarify their position on this issue, or object to such evidence on any appropriate basis at trial.

Additionally, as explained above, the Court grants the Sweitzers' Motion *in Limine* to Preclude Any Evidence Regarding Plaintiff Jason Sweitzer's Alleged Failure to Lockout and Tagout (Docket No. 24), and grants the Sweitzers' Motion *in Limine* to Preclude Any Evidence of Compliance with Industry Standards and OSHA Government Regulations (Docket No. 26) insofar that such evidence would be offered to show Oxmaster and Wirtz's alleged reasonableness in their design choice or the alleged absence of a product defect. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

jury only considers the actions for the appropriate inquiry.").