IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON SWEITZER, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| OXMASTER, INC., et al., | : | NO. 09-5606 |
| Defendants. | : | |

**MEMORANDUM**

GENE E.K. PRATTER, J.                                                                                    MARCH 1, 2011

Jason Sweitzer and his wife, Kristin Sweitzer, are proceeding on theories of strict product liability in this action against Oxmaster, Inc. and Wirtz Manufacturing Company, Inc. This matter arises from an incident that occurred on April 29, 2009, when Mr. Sweitzer, a paste mixer operator, was scraping residue inside a paste mixer manufactured by Oxmaster and a mixer paddle allegedly amputated Mr. Sweitzer's right index finger.

In anticipation of jury trial, Oxmaster and Wirtz filed three motions *in limine* that are presently before the Court: 1) Defendants' Motion in Limine to Preclude Evidence Regarding Alleged Defects in Paste Mixing System Components Based on Other Alleged Similar Incidents (Docket No. 13) (hereafter "Defs.' Mot. No. 13"); 2) Defendants' Motion in Limine to Preclude Plaintiff From Presenting a Claim for Future Lost Earnings (Docket No. 14) (hereafter "Defs.' Mot. No. 14"); and Defendants' Motion in Limine to Preclude Evidence Regarding Oxmaster, Inc.'s Design of a Mechanical Scraper (Docket No. 15) (hereafter "Defs.' Mot. No. 15"). The Sweitzers responded to each of these motions,[1] and the Court will presently address the three motions *ad seriatim*.

---

[1] The Sweitzers filed: 1) Plaintiffs' Response to Defendant's Motion in Limine to Preclude Other Alleged Similar Incidents (Docket No. 32) (hereinafter "Pls.' Resp. No. 32"); 2)

## I. STANDARD OF REVIEW

The Court's inherent authority to manage the cases brought before it allows this Court to decide the present motions *in limine*. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The Court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Accordingly, the Court may decide such motions to ensure the jury is not exposed to unfairly prejudicial, confusing, or irrelevant evidence, even if doing so may limit a party's defenses. *See United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). An *in limine* motion "is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). It may also be appropriate for the Court to consider an *in limine* motion when it is more efficient to rule prior to trial and the pre-trial motion facilitates more thorough briefing than would likely be available during the course of trial. *Japanese Elec.*, 723 F.2d at 260. Even so, if the context of trial would provide clarity, the Court may defer the issues until trial. *Id.*

---

Plaintiffs Jason Sweitzer and Kristin Sweitzer's Response to Defendant Oxmaster, Inc.'s Motion in Limine to Preclude Plaintiff From Presenting Claim for Future Lost Earnings (Docket No. 34) (hereinafter "Pls.' Resp. No. 34"); and 3) Plaintiffs Jason Sweitzer and Kristin Sweitzer's Response to Defendant Oxmaster, Inc.'s Motion in Limine to Preclude Evidence Regarding Oxmaster, Inc.'s Design of a Mechanical Scraper (Docket No. 33) (hereinafter "Pls.' Resp. No. 33"). Oxmaster and Wirtz also filed a Reply Memorandum in Support of Defendants' Motion in Limine to Preclude Evidence Regarding Alleged Defects in Paste Mixing System Components Based on Other Alleged Similar Incidents (Docket No. 36) (hereinafter "Defs.' Reply No. 36"), a Reply Memorandum of Law in Support of Defendants' Motion in Limine to Preclude Evidence Regarding Oxmaster, Inc.'s Design of a Mechanical Scraper (Docket No. 37) (hereinafter "Defs.' Reply No. 37"), and a Supplemental Reply Memorandum of Law in Support of Defendants' Motion in Limine to Preclude Evidence Regarding Oxmaster, Inc.'s Design of a Mechanical Scraper (Docket No. 40) (hereinafter "Defs.' Supp. Reply No. 40").

Additionally, the Court is guided by Pennsylvania substantive law and federal evidentiary rules in deciding Oxmaster and Wirtz's motions. As this Court previously has held, this strict liability action is controlled by the substantive law of Pennsylvania, and specifically Section 402A of the Second Restatement of Torts. *See Sweitzer v. Oxmaster, Inc.*, Civil Action No. 09-5606, 2010 WL 5257226 (E.D. Pa. Dec. 23, 2010).

The Court also considers these pending *in limine* motions, when appropriate, under Federal Rules of Evidence 401, 402, and 403. Federal Rule of Evidence 402 provides that evidence is not admissible if it is not relevant, and evidence is not relevant when it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401. Even if evidence is relevant, however, it may nevertheless be subject to exclusion under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Unfair prejudice is an "undue tendency to suggest decision on an improper basis." *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 (3d Cir. 1990) (citing Fed. R. Evid. 403 advisory committee's note).

## II. MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF ALLEGED SIMILAR INCIDENTS

Oxmaster and Wirtz seek to bar the Sweitzers from presenting evidence of two previous accidents occurring in 1998 and 2008, respectively, involving paste mixing system components that Oxmaster allegedly manufactured. Defs.' Mot. No. 13 at 1, 8. They claim that evidence of the other accidents is not relevant because the circumstances of those accidents are not

sufficiently similar to the circumstances at issue in this action. *Id.* at 8. The Sweitzers disagree—asserting that the two accidents involved sufficiently similar facts and thus are relevant to show the product's defective condition. Pls.' Resp. No. 32 at 7, 10.

In a products liability action, evidence of prior accidents involving a product may be admitted into evidence under certain circumstances to show facts concerning design defect, a product's dangerous nature, notice to defendant of the danger, and causation. *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 97 (3d Cir. 1983) (citation omitted); *see also Barker v. Deere and Co.*, 60 F.3d 158, 162 (3d Cir. 1995). In order to establish that "other accident" evidence is relevant under Federal Rule of Evidence 401, a proponent of such evidence has the burden of demonstrating that the other accidents "occurred under circumstances substantially similar to those at issue in the case at bar." *Barker*, 60 F.3d at 162 (citations omitted). In particular, there must be sufficient similarity between an "other accident" and the plaintiff's theory of how his accident occurred so that the admission of the evidence "will make the existence of any fact that is of consequence to the determination of the action more probable." Fed. R. Evid. 401; *see also Gumbs*, 718 F.2d at 98; *Wasson v. HRI Liquidating Corp.*, Civ. A. No. 92-3053, 1995 WL 130652, at *9 (E.D. Pa. Mar. 17, 1995). "This foundational requirement of establishing substantial similarity is especially important in cases where the evidence is proffered to show the existence of a design defect. . . . In such cases, the jury is invited to infer from the presence of other accidents that a design defect existed which contributed to the plaintiffs' injuries." *Barker*, 60 F.3d at 162-63.

The Court "must be apprised of the specific facts of previous accidents in order to make a reasoned determination as to whether the prior accidents are 'substantially similar.'" *Id.* at 163.

4

Accordingly, the proponent of "other accident" evidence may not rely on allegations that the accidents are similar, *Schmidt v. Duo Fast Corp.*, No. CIV.A. 94-6541, 1995 WL 648471, at *2 (E.D. Pa. Oct. 30, 1995), and it is insufficient merely to show that the previous accidents involved the "very product at issue in the current litigation." *Nesbitt v. Sears, Roebuck and Co.*, 415 F. Supp. 2d 530, 536 (E.D. Pa. Oct. 20, 2005) (citing *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 450 (W.D. Pa. 2003)).

The Sweitzers argue that the 1998 and 2008 accidents are substantially similar to Mr. Sweitzers' accident because the method of injury in all three incidents resulted from an individual's contact with the mixer blades moving or coasting in such a manner as to create a "shear point . . . between the rotating scraper blade and the inner wall of the mixer." Pls.' Resp. No. 32 at ¶¶ 21-24. The Sweitzers contend evidence of the 1998 and 2008 accidents is relevant to support their defect design theories—specifically, alleging that the accidents would not have transpired if Defendants had supplied a mechanical scraper, installed a zero-speed indicator, or controlled the residual motion of the wall scraper after the mixer's shutdown. *Id.* at 10.

The Court finds that the Sweitzers have not satisfied their burden of demonstrating substantial similarity with the 1998 and 2008 accidents. First, in regards to both the 1998 and 2008 accidents, the Sweitzers appear to presume that because Defendants provided information about both accidents in response to discovery inquiries, there is sufficient basis to find substantial similarity. Pls.' Resp. No. 32 at 8. However, the Court does not find the fact that the Defendants raised the 1998 or 2008 accidents in discovery is per se dispositive of substantial similarity. *Cf. Nesbitt*, 415 F. Supp. 2d at 536 n.6 ("The Court fails to infer that the accidents studied [for the

manufacturer's internal studies on the product at issue] . . . are factually similar from the naked fact that [the manufacturer] chose certain accidents for a particular study.").

Second, the Sweitzers rely only on two pieces of evidence that provide little specificity about the circumstances of the 1998 accident: (1) an August 18, 1998 "Accident Investigation" memorandum that summarily describes the accident, the machine involved, findings concerning the accident's cause, and the post-accident repairs, Pls.' Resp. No. 32, Ex. B, and (2) an excerpt from the deposition of Ralph Osten, Defendants' corporate designee, who testified that the 1998 injury was attributed to a switch problem, *id.*, Ex. C-1, at 209-10. Neither piece of evidence provides specific facts from which the Court can make a reasoned determination on whether substantial similarity exists.

Third, the Sweitzers' evidence concerning the 1998 accident suggests that the 1998 mixer and the mixer in suit may not be similar, because another company, Superior Steel, originally built the 1998 mixer machine. Pls.' Resp. No. 32, Ex. B, at 1. Although Oxmaster provided unspecified upgrades to and "reworked" the machine several years later, the Sweitzers do not address whether this is pertinent in determining substantial similarity between the mixers. Pls.' Resp. No. 32, Ex. B, at 1. Instead, the Sweitzers assert that, even though the Defendants did not originally manufacture the 1998 mixer, case law supports finding substantial similarity here. Pls.' Resp. No. 32 at 5. Certainly, some courts have found "substantial similarity" to exist between different models of products or products produced by different manufacturers, however, in the cases that the Sweitzers raise, unlike here, there were sufficient specific facts for determining the similarity of the product components. *See DiFrancesco v. Excam, Inc.*, 642 A.2d 529, 537 (Pa. Super. Ct. 1994) (finding that "other incidents involving accidental

6

discharges of weapons possessing the identical design features" to the gun at issue were admissible, "since the critical nature of the defect, at issue, is the capacity of the [gun] to fire accidentally after a collision with another object, as opposed to a user intentionally pulling the trigger"); *Rogers v. Johnson & Johnson Products, Inc.*, 585 A.2d 1004, 1007 (Pa. Super. Ct. 1990) (concluding that the trial court did not abuse its discretion in admitting a report describing products from different production batches and resulting in injuries that were not identical to the plaintiff's injuries was properly admitted, because "production batches were made sequentially and included many of the same raw materials," and "the trial court excluded numerous other reports of burns that did not involve cold water or share the same package/shipping number").

Without any specific facts, it is unclear how a mixer originally made by another company and "reworked" by Defendants can be substantially similar to the Oxmaster-manufactured mixer at issue here. The Sweitzers, moreover, have not provided any evidence indicating that the mixers' component layouts, mechanics, or other attributes are such that the mixers are substantially similar. Indeed, the parties' briefing provides the Court with more information about the mixers (albeit with no record citations) than the "Accident Investigation" memorandum and Mr. Osten's deposition transcript. The briefing suggests that the two machines had similar components, such as a mixing bowl, paddles, blades, a discharge door, and a cone feeder. Defs.' Mot. No. 13 at 8, ¶¶ 2, 5, 6; Pls.' Resp. No. 32 at ¶¶ 1-2, 5-7.[2] But even this information cannot substantiate finding substantial similarity.

---

[2] The Defendants' Motion further states that the 1998 mixer's paddles and blades rotated when the mixer operated and that the mixer was operated by a control system. Defs.' Mot. No. 13 at ¶ 16. However, the Sweitzers' deny this. Pls.' Resp. No. 32 at ¶¶ 15-16 ("It is admitted only that in 1998 there as an accident involving one of Defendant's paste mixers that was highly similar to the accident in this case.").

Fourth, the Sweitzers have failed to establish substantial similarity between the circumstances of the 2008 accident and Mr. Sweitzers' alleged accident for purposes of admitting evidence of the 2008 accident. In particular, Oxmaster and Wirtz have raised facts, supported by the Sweitzers' proffered evidence, concerning certain differences between the mixers that indicate the mixers are not substantially similar.[3] Because of these identified differences and the Sweitzers' failure to discuss them in their analysis, a finding of substantial similarity is precluded at this time.

Fifth, and significantly, the Court is unable to make a reasoned determination how the 1998 or 2008 accidents are substantially similar to Mr. Sweitzer's accident in order to demonstrate the Sweitzers' design defect theories. For example, the Sweitzers fail to present specific facts that demonstrate that the 1998 accident supports their theory that Mr. Sweitzer's accident would have been prevented if Defendants had controlled the residual or coasting down motion of the blades after the machine was shut off.[4] The Sweitzers likewise have not sustained

---

[3] As examples, Oxmaster and Wirtz argue that there were differences between the 2008 mixer and mixer in suit concerning the manner in which employees access the mixer interiors and the paddles' coast down times. The 2008 mixer had a locking switch that unlatched as soon as power ceased driving the internal paddles, and a thirty-five second coast down time. Pls.' Resp. No. 32, Ex. C-2 at 1. In contrast, for the mixer that allegedly injured Mr. Sweitzer, the power to the internal paddles ceased when an employee lifted the plexiglass lid of a cone feeder connected to the mixer's bowl, and the coast down time was ten to thirteen seconds. *Id.* at ¶¶ 5-7; Defs.' Mot. No. 13 at ¶¶ 6-7.

[4] The Sweitzers'1998 accident evidence suggests that the accident might not support the theory at all. The evidence indicates that, because the power to the blades never ceased due to a faulty feed switch, the blades' principle motion—rather than any residual or coasting down motion—contributed to the injury. Pls.' Resp. No. 32, Ex. B, at 1-2; *id.*, Ex. C-1, at 209-10. If there was no residual or coasting down motion in the 1998 accident, the Court presently fails to infer how evidence of that accident would be relevant in determining a defect involving the control of the blades' residual motion.

the burden of establishing how evidence of the 1998 accident demonstrates their theories involving the mechanical scraper or zero-speed indicator.

This is equally true for the 2008 accident. For instance, the Sweitzers have not demonstrated that the 2008 accident would provide evidentiary support for their theory that a zero speed indicator would have prevented the 2008 accident.[5] Nor have the Sweitzers sufficiently supported their position through affidavits or other documentation that evidence of this accident would make the determination of the defect theories involving the mechanical scraper or controlling residual motion more probable.

Instead, the Sweitzers have only provided a conclusory statement that the 1998 and 2008 accidents would not have happened if the design defects had not existed. Pls.' Resp. No. 32 at 10. Such a statement does not provide sufficient basis for the Court to find that the 1998 or 2008 accidents are substantially similar to the circumstances of Mr. Sweitzer's accident such that evidence of these prior accidents is admissible.[6]

---

[5] Indeed, the Court does not infer at this time that evidence of the 2008 accident would support a design defect theory involving a zero speed indicator. Mr. Osten's testimony about zero speed indicators suggests that "zero speed" is a misnomer, and that such an indicator only either "assume[s]" that moving components are no longer rotating or that "[y]ou may . . . not have actual zero speed, but you're darn close to it." Pls.' Resp. No. 32, Ex. C-1, at 189-90. Additionally, such indicators appear only to detect revolving motion, *id.*, and no evidence presented thus far indicates whether an indicator would thus detect "coast down motion," which may or may not involve rotational motion.

[6] The Sweitzers have also asserted, albeit with cursory discussion, that "other accident" evidence is relevant to show Defendants had notice of the defect. Pls.' Resp. No. 32 at 7, 9, 10. According similar limited attention to the issue, Oxmaster and Wirtz merely state that the issue of notice is inapplicable in this action. Defs.' Reply No. 36 at 5.
   Based on the Sweitzers' theories of strict liability, it is not immediately apparent that the issue of notice arises in this action, since proving a theory that "a defendant knew, or should have known, of the danger" is generally "inapposite" when a "defendant's duty is absolute," as it is in the strict liability context. 1 *McCormick on Evidence* § 200 (6th ed.). The cases that the

Accordingly, the Court grants Oxmaster and Wirtz's Motion at Docket No. 13, because the Sweitzers have failed to satisfy their burden of demonstrating substantial similarity between the circumstances of the 1998 and 2008 accidents and Mr. Sweitzer's accident for the purpose of presenting evidence of these accidents to demonstrate the Sweitzers' design defect theories.[7]

## III. MOTION *IN LIMINE* TO PRECLUDE CLAIM FOR FURTHER LOST EARNINGS

Oxmaster and Wirtz move to bar the Sweitzers from presenting evidence or testimony at trial to support a claim for future lost earnings on the grounds that the claim, and particularly the Sweitzers' expert's calculation of damages, has no basis in fact. Defs.' Mot. No. 14 at 6-7. Specifically, they assert there is "no credible evidence" that shows Mr. Sweitzer will not be able to continue to work at his current employer at his pre-injury wage rate. *Id.* at 7. The Sweitzers

---

Sweitzers cite to support their position do not contradict this axiom. *See DiFrancesco*, 642 A.2d at 535, 537 (stating the conventional proposition of law that other incidents "may be relevant to a number of issues," including "that the defendant had actual or constructive notice of a condition that could cause harm," and affirming the trial court decision to admit other accident evidence to show defective condition—not notice, since that issue was not before the Court); *Rogers*, 585 A.2d at 1007 (determining there was no abuse of discretion when the trial court admitted a report into evidence for the purpose of showing defendant's notice of malfunction, a defect theory that the Sweitzers do not raise in this action). Without further clarification from the parties, it remains unclear if the issue of notice could be raised under some other theory of the Sweitzers' case. *See, e.g.*, *McCormick*, *supra*, § 200 ("Even in many strict product liability cases, demonstrating that the product is defective or unreasonably dangerous for its intended use requires an analysis of foreseeable risks.").

Nonetheless, given the previously discussed reasons for determining that the Sweitzers have not satisfied their burden of demonstrating substantial similarity with the 1998 and 2008 accidents for the purpose of showing defective condition, and because the Sweitzers also have failed to demonstrate—indeed, wholly failed to brief the issue—that the 1998 and 2008 accidents would support a notice theory, the Court finds that the Sweitzers similarly have not met the burden of demonstrating substantial similarity concerning a notice theory.

[7] To the extent the Sweitzers seek to introduce evidence of the 1998 and 2008 accidents at trial in support of their design defect theories, or a cognizable notice theory, they must request a pre-trial hearing, present appropriate offers of proof, and receive a formal ruling from the Court as to the admissibility of such evidence. *See Nesbitt*, 415 F. Supp. 2d at 538 n.8.

disagree and argue that their claim for future lost earnings capacity damages is supported by a reasonable basis for calculating such damages. Pl.'s Resp. No. 34 at 8-10.[8]

Pennsylvania recognizes loss of future earnings capacity as "a distinct item of damages, which if properly proved, may result in recovery for the plaintiff," if the plaintiff has suffered a permanent injury. *Borman v. Raymark Indus., Inc.* 960 F.2d 327, 336 (3d Cir. 1992) (quoting *Kaczkowski v. Bolubasz*, 421 A.2d 1027, 1029-30 (Pa. 1980)). Loss of earning capacity is "not solely the comparative amount of money earned before or after an injury," but instead the "true test is whether or not there is a loss of earning power, and of ability to earn money." *Mazi v. McAnlis*, 74 A.2d 108, 121 (Pa. 1950) (citations omitted); Pa. Suggested Standard Civil Jury Ins. § 6.08(a), © (2008) (stating that future earning capacity is the "decrease in or loss of future productivity," with "future productivity" defined as "the increase in wages or compensation that the [plaintiff] . . . would have received had [he] [she] not sustained the injury").

"Under Pennsylvania law, a tort plaintiff must only prove damages with 'reasonable certainty.'" *Barnes v. United States*, 685 F.2d 66, 69 (3d Cir. 1982) (citations omitted). As the Pennsylvania Supreme Court has summarized:

> The "law does not require that proof in support of claims for damages or in support of compensation must conform to the standard of mathematical exactness." *Lach v. Fleth*, 361 Pa. 340, 352, 64 A.2d 821 (1949). All that the law requires is that "(a) claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough." *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 453-54, 197 A.2d 721, 727 (1964). *See also*, *Smail v. Flock*, 407 Pa. 148, 180 A.2d 59 (1962); *Getz v. Freed*, 377 Pa. 480, 105 A.2d 102 (1954). "If the facts afford a

---

[8] Although Oxmaster and Wirtz raise issues in their Motion concerning the testimony of Dr. Robert P. Wolf, Ed.D., an expert for the Sweitzers, they do not appear to be challenging the admissibility of Dr. Wolf's expert testimony under Federal Rules of Evidence 407. If the Motion was making such a challenge, it would be in contravention of the deadline for *Daubert* motions under the Court's Scheduling Order (Docket No. 9).

> reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation." *Western Show Co., Inc. v. Mix*, 308 Pa. 215, 162 A. 667 (1932).

*Kaczkowski*, 421 A.2d at 1030. Once the plaintiff satisfies this standard, then lost future earnings capacity damages may be submitted to the fact finder for consideration. *See, e.g., Kearns v. Clark*, 493 A.2d 1358, 1364 (Pa. Super. Ct. 1985) (requiring "sufficient data from which the damages can be assessed with reasonable certainty" before a jury may decide whether loss of earning power occurred) (citation omitted); *Carrol v. Pittsburgh R.R. Co.*, 187 A.2d 293, 295 (Pa. Super. Ct. 1962) (affirming trial court's decision not to submit the issue of loss of earning capacity to the jury, because "the record is devoid of any evidence upon which the jury could have predicated a finding that the future earning power . . . had been impaired").

The Pennsylvania Supreme Court has provided factfinders with "a framework for calculating a damages award based on lost future earnings" and emphasized that "an evidentiary approach" should be taken in determining lost future earnings, specifically "the fact-finder should consider relevant evidence as to productivity factors and then make an informed estimation as to lost future earnings based on all the evidence presented." *Helpin v. Trs. of Univ. of Pennsylvania*, 10 A.3d 267, 273 (Pa. 2010) (citing *Kaczkowski*, 421 A.2d at 1029 n.5, 1031, 1033-34). The "relevant evidence as to productivity factors" may include factors, such as age, maturity, education, skill, and technology advances. *Id.*; *see also Kaczkowski*, 421 A.2d at 1036-37 (describing several possible factors available for consideration in determining lost future earnings capacity).

Thus, given the nature of damages for loss of earning capacity, and contrary to Oxmaster and Wirtz's argument, inadequate proof that Mr. Sweitzer will not be able to continue to earn his

pre-injury income does not at this time preclude the Sweitzers from presenting evidence to support a loss of earning claim at trial. *See Frankel v. Todd*, 393 F.2d 435, 438-39 (3d Cir. 1968) ("The Pennsylvania Supreme Court has ruled, time and again, that the circumstance that a plaintiff's earnings are higher after his injury than before it, is not a bar to recovery of damages for impairment of earning power, where impairment is of disabling effect."); *Holton v. Gibson*, 166 A.2d 4, 8 (Pa. 1960) ("[F]ailure to show a diminution in wages, subsequent to [plaintiff's] return to work (approximately three months after the accident) did not make improper the court's submission to the jury of the issue of loss of earning power or capacity."). Additionally, the Court presently finds that the evidence that the Sweitzers apparently intend to present at trial, specifically Dr. Wolf's testimony and expert report, Pl.'s Resp. No. 34, Ex. A, the findings of the Sweitzers' and Oxmaster and Wirtz's medical experts, *id.*, Exs. B, C, D, and Mr. Sweitzer's testimony, *id.*, Ex. E, are admissible pursuant to Federal Rules of Evidence 401 and 402, because they show facts that are relevant to productivity factors.[9] Based on these considerations, the Court denies the Motion at Docket No. 14 without prejudice.[10]

## IV. MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF MECHANICAL SCRAPER

Oxmaster and Wirtz move to preclude the Sweitzers from introducing at trial "evidence regarding Oxmaster, Inc.'s design of a mechanical scraper." Defs.' Mot. No. 15 at 4. The

---

[9] The Court also finds that the evidence that the Sweitzers intend to proffer at trial concerning loss of future earning capacity would not have a prejudicial effect that outweighs the evidence's probative value. *See* Fed. R. Evid. 403.

[10] To the extent that Oxmaster and Wirtz seek to object to the admissibility of any evidence offered for the purpose of loss of future earnings capacity, Oxmaster and Wirtz may make the appropriate objection at trial. Similarly, insofar as Oxmaster and Wirtz seek to bar the Sweitzers from submitting the loss of earning capacity claim to the jury, they may move to do so at the appropriate time.

mechanical scraper at issue was an alleged prototype that Oxmaster supplied to Mr. Sweitzer's employer, East Penn Manufacturing Company, after the accident occurred. *Id.* at 4, ¶ 5; Pls.' Resp. No. 33 at 9, ¶¶ 5-7.

Federal Rule of Evidence 407 precludes evidence concerning subsequent remedial measures "to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction." Fed. R. Evid. 407.[11] Underlying this Rule is a strong public policy of encouraging manufacturers to improve their products for greater safety, and the Rule "rejects the suggested inference that fault is admitted when remedial measures are taken subsequent to an injury." *Kelly*, 970 F.2d at 1276 (citing *Petree*, 831 F.2d at 1198); *see also Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408 (3d Cir. 2002).

There are, however, exceptions to Rule 407's exclusionary ambit: the Rule does not bar "evidence of subsequent measures when offered for other purposes, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Fed. R. Evid. 407 (emphasis added). Still, these "other purposes" do not automatically guarantee admissibility. First, if the parties do not dispute an other purpose, evidence proffered for that purpose alone is inadmissible. *See Kelly*, 970 F.2d at 1278, n.5; *Wusinich v. Aeroquip Corp.*, 843 F. Supp. 959, 961 (E.D. Pa. 1994). Second, even if an other purpose is controverted, "the possibility of misuse of the evidence as an admission of fault still requires a balancing of probative value and need

---

[11] The Rule applies in Pennsylvania strict liability cases before this Court. *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1275 (3d Cir. 1992); *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982). The Court of Appeals for the Third Circuit has also applied Rule 407 "to post-manufacture, pre-accident remedial measures." *Wusinich v. Aeroquip Corp.*, 843 F. Supp. 959, 961 (E.D. Pa. 1994) (citing *Kelly*, 970 F.2d at 1277; *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1198 (3d Cir. 1987)).

14

against potential prejudice under Rule 403." 2 *McCormick*, *supra*, § 267; *cf. Stecyk*, 295 F.3d at 415-16 (cautioning against permitting the impeachment exception of Rule 407 from "swallowing" the rule and "recogniz[ing] that, in light of the strong public policy considerations behind the rule and the risk of undue prejudice, the trial judge should be afforded a healthy deference in preserving both the rule and the exception"). Thus, this Court may also consider if other means of proof might be available given Rule 403's stricture to balance the probative value with prejudicial impact. McCormick, *supra*, § 267; Fed. R. Evid. 407 advisory committee's note ("Evidence of subsequent measures that is not barred by Rule 407 may still be subject to exclusion on Rule 403 grounds when the dangers of prejudice or confusion substantially outweigh the probative value of the evidence."); *see also* 23 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5288 (recognizing that Rule 403 can assist courts in cases where plaintiffs might abuse Rule 407's exceptions for "some tactical advantage").

Here, the defense recognizes that "evidence of a feasible alternative design may be admissible in a strict products liability action." Defs.' Mot. No. 15 at 5, ¶ 7. Notwithstanding this concession, they assert that evidence of the scraper is inadmissible because no evidence apparently can show that the design was feasible, and instead there is evidence suggesting the opposite.[12] As such, Oxmaster and Wirtz contend that evidence concerning the scraper is inadmissible because it is not relevant to the issue of defective design and is prejudicial and misleading. Defs.' Mot. No. 15 at 5-6, ¶¶ 11-14. In response, the Sweitzers argue that the

---

[12] As a means of establishing that the design is infeasible, Defendants proffer a July 1, 2010 email that East Penn's counsel sent to the parties' counsel, which states that the automatic mechanical scraper was "tested as part of an R&D experiment which ultimately failed." Defs.' Supp. Reply No. 40, Ex. A.

evidence concerning the scraper will be offered for the purpose of proving the feasibility of an alternative, safer design. Pls.' Resp. No. 33 at 8-9.[13]

Upon considering the parties' arguments, the Court concludes it inappropriate at this time to grant Oxmaster and Wirtz's motion to bar the Sweitzers from presenting evidence of the mechanical scraper at trial. The Sweitzers have represented that they intend to provide evidence of the scraper for a recognized other purpose under Rule 407—feasibility. As a preliminary matter, the Court presently finds that the mechanical scraper evidence is relevant under Federal Rule of Evidence 401 to determining whether an alternative design is feasible, because such evidence is material and probative of that issue.

The Court further finds that the parties at present appear to dispute the issue of feasibility. First, Oxmaster and Wirtz have not made an admission that feasibility is uncontroverted. *See Jacobson ex rel. Jacobson v. BMW of N. Am., LLC*, 376 F. App'x 261, 264 (3d Cir. 2010)

---

[13] Given the Court's rationale in deciding this Motion, the Court does not consider at this time the Sweitzers proposed second purpose for offering scraper evidence at trial under Federal Rule of Evidence 407. The Sweitzers stated that they seek to offer such evidence "to show . . . [Defendant's] recognition of the danger an operator would be exposed to by having the mixer manually cleaned by hand" and to demonstrate "acknowledgment by Defendant that its product was defective and had an unnecessary risk of injury based on its design." Pls.' Resp. No. 33 at ¶¶ 8-9. In determining whether this purpose is a permissible exception to Federal Rule of Evidence 407, the Court deems these statements rather ambiguous standing alone. To the extent that the Sweitzers generally cite certain authorities to support the proposition that "evidence of subsequent remedial measures is admissible . . . to show that Defendant recognized a danger with the design of its product," those authorities do not elucidate the Sweitzers' argument. *Id.* at ¶¶ 5-7 (citing Fed. R. Evid. 407 and *Diehl v. Blaw-Know*, 360 F.3d 427 (3d Cir. 2004)); *see also id.* at 8 (citing *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38 (3d Cir. 2009), Pa. R. Evid. 407, and *Duchess v. Langston Corp.*, 769 A.2d 1131 (Pa. 2001)).

Because the Court is not presently considering whether it may permit the presentation of subsequent remedial evidence for this second purpose that the Sweitzers propose, if the parties anticipate that any mechanical scraper evidence will be submitted for this alleged purpose at trial, the parties may present their positions and supporting authority in a renewed motion in advance of trial or raise the appropriate objection at trial.

(unpublished) (finding it unnecessary to admit evidence under Rule 407 when the parties had stipulated to feasibility); Fed. R. Evid. 407 advisory committee's note (observing that an opposing party may "lay the groundwork for exclusion by making an admission"). Second, the parties' very arguments highlight their disagreement concerning feasibility. Because the Sweitzers seek to introduce mechanical scraper evidence at trial to prove feasibility, an issue that apparently is controverted, Rule 407 permits such evidence for that limited purpose.

However, when further considering this Motion in light of Rule 403, the Court concludes that it is appropriate to defer resolution of this issue until trial. Both parties have provided what amount to conclusory or unsupported statements on the issues of probative value and prejudicial effect,[14] and the Court anticipates that trial will provide more sufficient clarification on and

---

[14] For example, Oxmaster and Wirtz argue that the mechanical scraper does not work, is infeasible, and thus is not relevant; ergo it is prejudicial and misleading. Defs.' Mot. No. 15 at 6; Defs.' Reply No. 37. Rule 403 does not contemplate evidence that is *not* relevant under Rule 401; indeed, it operates under the presumption that "certain circumstances call for the exclusion of evidence which is of *unquestioned* relevance." Fed. R. Evid. 403 advisory committee's note (emphasis added). Consequently, it appears that the Defendants' arguments fail to address considerations relevant to a Rule 403 analysis. *See* 1 *McCormick*, *supra*, § 185 ("[P]rejudice [under Rule 403] . . . does not simply mean damage to the opponent's cause—for that can be a sign of probative value, not prejudice. . . . Prejudice can arise, however, from facts that arouse the jury's hostility or sympathy for one side without regard to the probative value of the evidence."); Wright & Miller, *supra*, § 5215 ("In Rule 403, 'prejudice' does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means.").

As another example, the Sweitzers contend that evidence of the mechanical scraper is relevant to the issue of a feasible alternative design, and merely state "there is nothing unduly prejudicial about this evidence." Pls.' Resp. No. 33 at 10. This statement alone does not assist the Court in its Rule 403 analysis.

Additionally, separate from the issue of probative value and without drawing any conclusions, the Court observes that the report of the Sweitzers' liability expert, Bartley J. Eckhardt, P.E., describes several allegedly feasible alternative designs, including incorporating a visual zero-speed indicator, an interlock on the mixer lid, and automatic breaks, but does not appear to include the mechanical scraper among this discussion of alternative designs—despite

17

refinement of these issues. Consequently, the Court denies without prejudice Oxmaster and Wirtz's Motion at Docket No. 15.

**V. CONCLUSION**

For the foregoing reasons, the Court grants the Defendants' Motion in Limine to Preclude Evidence Regarding Alleged Defects in Paste Mixing System Components Based on Other Alleged Similar Incidents (Docket No. 13). Subject to the conditions provided in this opinion, the Court denies without prejudice the Defendants' Motion *in Limine* to Preclude Plaintiff From Presenting a Claim for Future Lost Earnings (Docket No. 14), and the Defendants' Motion *in Limine* to Preclude Evidence Regarding Oxmaster, Inc.'s Design of a Mechanical Scraper (Docket No. 15). An appropriate Order follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

---

its mention in a separate section of the report. *Id.*, Ex. A at 10-15; *see also* Fed. R. Civ. P. 26(a)(2)(B)(I) (requiring an expert witness to provide a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them.").